FILED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

(Alexandria Division)

' 2016 JUL 14  P 3 20

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| MONA LISA BERRY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. #1:16-cv-_897_ |
| | ) _TSE/MSN_ |
| TARGET CORPORATION, | ) |
| | ) |
| Serve: CT Corporation System | ) |
| 4701 Cox Road, #285 | ) |
| Glen Allen, VA 23060 | ) |
| | ) |
| and | ) |
| | ) |
| JONAS GARCIA, | ) |
| 3215 S. 24th Street, #417 | ) |
| Arlington, VA 22206 | ) |
| | ) |
| Defendant. | ) |

COMPLAINT

Preliminary and Jurisdictional Statement

1. While shopping at defendant Target Corporation's store in Falls Church, Virginia,

Mona Lisa Berry, an African-American woman, was profiled and surveilled by Target loss

prevention personnel. When she approached merchandise held out for sale near the store's

entrance door, loss prevention employee Jonas Garcia detained her for suspected shoplifting,

referring to her by a racial slur in the bargain. She was handcuffed in the store's loss prevention

interrogation area, where Target personnel discovered that she had sufficient cash and credit

cards to pay for the merchandise in her cart and that she had not concealed any Target

merchandise in her purse. Notwithstanding, Target procured her arrest and prosecution for grand larceny. Having been found not guilty by a jury, Ms. Berry now seeks compensation from Target and Mr. Garcia for racial discrimination in contracting under federal law, targeted surveillance amounting to harassment on the basis of her race, false imprisonment, and malicious prosecution in violation of state law. This case arises under 42 U.S.C. §1981 and the court has jurisdiction under 28 U.S.C. §1331. The court has supplemental jurisdiction over Ms. Berry's state law claims, which arise out of the identical facts underlying her federal claims, under 28 U.S.C. §1367.

## Parties

2. Mona Lisa Berry is a 47-year-old adult resident of Arlington, Virginia and a long-time customer of Target stores. She is African-American.

3. Target Corporation is a corporation incorporated and with its principal place of business in the State of Minnesota. Under the name Target Stores, Inc., it does business in Falls Church, Virginia at its store, Skyline Target, located at 5115 Leesburg Pike, Falls Church.

4. Jonas Garcia was, at the time relevant to this action, an employee of Skyline Target, where he worked as a Senior Asset Protection Specialist.

## Claim for Relief

### Target Security

5. Target operates large department stores that sell a variety of goods, including home goods, clothing, and food.

6. At its Skyline location, Target employs different security measures to prevent shoplifting.

7. Skyline Target's security measures include surveillance cameras that record discrete areas of the store, cameras that loss prevention personnel can operate to follow individuals engaging in suspected suspicious behavior, and loss prevention personnel who follow suspected shoplifters on foot throughout the store.

8. Shoppers entering or exiting Skyline Target must pass through two sets of automatic sliding doors. To exit the store, shoppers must pass through the interior set of doors, which feeds into a lobby or foyer, and then pass through an exterior set of doors, which feeds into a parking lot. The two sets of doors are separated by about fifteen feet of carpeted open space stretching beyond the width of the doors.

9. On the inside of the interior set of doors are large security detectors, readily visible to anyone walking into the store. The detectors set off an audio and visual alarm when merchandise armed with a live security sensor passes through or gets too close. On information and belief, all merchandise that costs $30.00 or more is equipped with a barcode that functions as a security sensor that will trigger the alarm if not deactivated at the register upon purchase.

10. As a further security measure, a video monitor situated inside the store, prominently displayed and readily visible to anyone walking into the store, depicts all activity occurring in front of and between the doors. Persons walking into the store see themselves on the screen directly in front of them and know that they are being monitored. Such a monitor was in place in front of the doors where Ms. Berry was taken into custody.

11. The exterior set of doors feeds directly into a gated parking lot, from which cars can exit once the driver deposits an appropriate ticket or pays the appropriate fee.

12. The gated parking lot is marked throughout with signs advertising Target's use of video surveillance.

13. As a long-time patron of Target, Ms. Berry was acquainted with the various security devices and protocols described above, openly in use at the Skyline Target.

Ms. Berry Gets Profiled

14. On August 29, 2014 at approximately 7:00 pm, Ms. Berry entered Skyline Target. She proceeded throughout the store, with which she was familiar, looking at various merchandise and putting home goods and clothing in her cart.

15. Shortly after Ms. Berry entered the store, loss prevention employee Jonas Garcia profiled her as a shoplifter on the basis of her race, as he himself later confirmed to Ms. Berry. He began following her movements on foot throughout the store and continued to do so for over 90 minutes.

16. Ms. Berry saw Mr. Garcia following and watching her. Having nothing to hide, Ms. Berry continued to shop, disregarding Mr. Garcia.

17. At Mr. Garcia's request, other loss prevention personnel tracked her movements and activity remotely with targeted video surveillance. The cameras depicted her doing nothing more than shopping while black.

18. Ms. Berry selected and placed into her cart a large, 20-gallon plastic storage container and a rolled, 5'x7' area rug on sale for $49.

19. Ms. Berry put the container and the rug into the Target shopping cart she was using. The five foot rug stuck out substantially from the cart, rendering it occasionally unwieldy to maneuver. A still photo taken from Target's video surveillance footage, showing Ms. Berry with these items in the cart, is attached as Exhibit A.

20. On information and belief, the rug and other items in Ms. Berry's cart were armed with barcodes that would have triggered an alarm had they gone through the security detector without having been scanned at the check-out register.

21. At all times Ms. Berry understood that Target's security system could and would alert store security to the passage of unpaid merchandise through the security detectors prominently stationed by each door.

22. Skyline Target displays merchandise – often food or drink – on a row of large wooden palates near the main entrance/ exit doors. From the perspective of a shopper inside the store facing the entrance/ exit doors, the palates are stacked just inside and to the right of the interior sliding doors, within a few feet of a security detector framing the doors. Depending on how many palates are used to stock items for sale, the palates extend inside the store approximately a dozen or more feet. On the occasion in question, the palates extended to the edge of a carpeted area approximately 14' inside the store from the interior sliding doors. The palates are not near any sales counter.

23. Ms. Berry decided to buy a bag of chips before proceeding to the check-out counter. Seeing what appeared to be chips on some of the palates by the entrance door, she maneuvered her full cart toward the palates, backed it out of the way of customers entering through the sliding doors, then pulled the cart from its front end, as she reached with her other hand to select a bag of

chips from the interior-most palate, approximately a dozen feet from the sliding door. At this time she had been in the store about 90 minutes.

### Ms. Berry Gets Arrested

24. As Ms. Berry prepared to proceed to the check out area, Mr. Garcia ran up to her, took hold of her arm and told her to come with him, accusing her of shoplifting.

25. Upon apprehending her, Mr. Garcia said into a cell phone or radio words to the effect of "I got me another nigger."

26. The circumstances did not reasonably permit the conclusion that Ms. Berry was shoplifting. She was selecting merchandise that Target saw fit to make available for sale next to a store door and immediately adjacent to a store security device, which was perfectly visible and which Ms. Berry, like most shoppers, understood would immediately alert security to possible theft. Her cart included an unwieldy rug five feet tall and a twenty gallon plastic container. *See* Exhibit A. Her activities, like those of all shoppers, were being monitored via video surveillance and displayed conspicuously on a screen facing the entrance to the store, which she had seen many times upon entering the store. Had she gone through the first sliding door, on the way out, she would have had to traverse another approximately fifteen feet of open space, within the store building, to an exterior sliding door. She would then have exited into a gated parking lot from which she could exit to the public street only by paying or showing a sales receipt. Ms. Berry knew all these things.

27.  Ms. Berry was taken to a loss prevention interrogation room, where she was handcuffed and was made to sit down on a chair.  She remained calm and cooperative throughout.

28.  Mr. Garcia went through the items in Ms. Berry's cart and separately combed through her purse.  He discovered that she had not concealed any Target merchandise in her purse and that she had several hundred dollars in cash and credit cards in her wallet, sufficient to pay for everything she had in her cart.

29.  While Ms. Berry was detained in the booking room, Mr. Garcia said words to the effect of "Y'all come in here and steal."  When Ms. Berry asked him who he was referring to with the word "Y'all," Mr. Garcia did not respond.  On information and belief, Mr. Garcia was referring to African American women and/or African Americans generally.

30.  Mr. Garcia seized the merchandise in Ms. Berry's cart and did not let her purchase what she had selected.

31.  Ms. Berry remained in handcuffs for approximately 40 minutes before a Fairfax County police officer arrived to take her to jail.

32.  Mr. Garcia had Ms. Berry sign a paper acknowledging that she was banned from entering Target property, and had her arrested and ultimately prosecuted for grand larceny.

33.  On information and belief, all of Mr. Garcia's actions here at issue, which are attributable to Target, were motivated by the racial animus exemplified by his racially charged comments.

34.  Ms. Berry was taken to Fairfax County Adult Detention Center for formal booking, paid her own bail with the cash she had with her, and was released on recognizance.

35. Refusing any proposed plea bargain, on or about July 7, 2015, Ms. Berry went to trial, where a jury found her not guilty of the grand larceny charges that Target pressed against her.

36. Ms. Berry has suffered emotional and psychological injury from being surveilled, harassed and apprehended on the basis of her race, being referred to as a nigger for the first time in her adult life, being handcuffed and arrested for shopping while black, and being forced to defend herself against baseless criminal charges. As a result of this incident, she has also experienced, and continues to experience, high levels of anxiety triggered by being in public shopping areas, for which she has received treatment, and other emotional distress.

## Causes of Action

### Count I: Violation of 42 U.S.C. §1981

37. By holding out merchandise for sale to the public, Target entered into a proposed contractual relationship with its patrons, including Ms. Berry, whereby Target would sell them merchandise in exchange for money. Although Ms. Berry intended to purchase merchandise, defendants, having racially profiled her, refused to sell to her while subjecting her to racial epithets. By doing so, defendants interfered with her right to contract freely without regard to race, in violation of 42 U.S.C. §1981.

## Count II: Violation of Virginia Hate Crimes Act

38. By surveilling, apprehending, detaining and otherwise harassing Ms. Berry with no cause, and subjecting her to racist remarks, Target, through its agent Mr. Garcia, harassed Ms. Berry on the basis of her race, in violation of *Code of Va.* §8.01-42.1.

## Count III:  False Imprisonment

39. By initially detaining her without cause and continuing to detain her after their investigation revealed that she had sufficient money to cover the purchase and that she had not concealed merchandise in her purse, defendants caused Ms. Berry to be falsely imprisoned.

## Count IV:  Malicious Prosecution

40. By their actions set forth above, defendants maliciously prosecuted Ms. Berry.

* * *

Wherefore, Ms. Berry requests an order of the court granting her:

* An award of her actual damages in an amount appropriate to the proof at trial,

* An award of punitive damages appropriate to the proof at trial,

* Her costs, including reasonable attorney's fees, and

* Such other relief as is just.

Ms. Berry requests trial by jury.

Respectfully submitted,

MONA LISA BERRY,

By counsel

Dated:   July 14, 2016

Counsel for Plaintiff:


Victor M. Glasberg, #16184
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA  22314
(703) 684-1100 / Fax: 703-684-1104
vmg@robinhoodesq.com
BerryMonaLisa\Pleadings\Complaint


Maxwelle C. Sokol, #89589
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA  22314
(703) 684-1100 / Fax: 703-684-1104
msokol@robinhoodesq.com


Matthew T. Sutter, Esq., #66741
Wade, Friedman & Sutter, P.C.
616 North Washington Street
Alexandria, VA 22314
703-836-9030 / Fax: 703-683-1543
sutter@oldtownlawyers.com